UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONNA ADAMS,<br><br>      *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE NAVY,<br><br>      *Defendant.* | Civil Action No. 17-1618 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Adams, proceeding *pro se*, brings this action against the United States Department of the Navy ("the Navy"), where she worked as an Electronics Engineer with the Strategic Systems Program. Dkt. 1 at 4. Her complaint, which is comprised of a single handwritten page and a copy of a Final Agency Decision on an Equal Employment Opportunity complaint, appears to assert claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.  See* Dkt. 1 at 1. The Final Agency Decision from the Navy regarding her Equal Employment Opportunity ("EEO") claim details two actions allegedly taken based on Adams's race, sex, age, and protected EEO activity that formed the basis for Adams's administrative complaint:  (1) a denial of time off to attend a professional development conference and issuance of a Letter of Caution for attending that conference and (2) the fact that other members of her team received a "Special Act Award"—which came with a $2,500 cash prize—and she, the only African-American woman on the team, did not. *Id.* at 3, 5–6. The Navy now moves for summary judgment, or, in the alternative, for partial summary judgment and partial dismissal of

Adams's claims. Dkt. 11. For the reasons explained below, the Court will grant in part and deny in part the Navy's motion.

## I. BACKGROUND

### A.     Factual Background

Adams is an African-American woman who was in her mid-fifties and employed as an Electronics Engineer with the Navy's Strategic Systems Program at the time of the two incidents detailed in the Final Agency decision. Dkt. 1 at 1, 3. Her complaint is a single handwritten page that reads, in relevant part:

> On January 16, 2015, I did not receive a Special Act Award for my work on the D5 Life Extension Acceleration to Demonstration and Shakedown Operations (DASO-25) efforts. I was subject to a hostile work environment and ongoing harassment base[d] on my race (African-American), sex (female), age (DOB: 02/26/1960), and reprised/reprisal (prior EEO activity, Docket Number 11-00030-01695. My business travel was scrutinized, blackballed for promotions to GS-14 and higher.

*Id.* at 1. In evaluating the Navy's motion to dismiss, however, the Court may also consider the allegations contained in the Final Agency Decision that is attached to Adams's complaint. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety[.]"); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."). Because the complaint is so threadbare, the bulk of the factual background is derived from that Final Agency Decision. For purposes of evaluating the Navy's motion to dismiss, the following facts taken from those two documents are accepted as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

The Final Agency Decision addressing Adams's claims focuses on two instances of alleged disparate treatment. The first incident occurred on January 16, 2015, when Adams did not receive a Special Act Award along with the other members of her team. Dkt. 1 at 3, 5. Despite being "very involved in the success of [D5 Life Extension Acceleration to Demonstrate and Shakedown Operations ("DASO-25")]," *id.*, and having her name submitted for the award by one of her supervisors, *id.* at 5, Adams did not receive an award, *id.* at 3. In describing the criteria for the award selection to the Equal Employment Opportunity Commission ("EEOC"), another supervisor stated that each potential recipient was considered under a numerical rankings system, which included criteria such as "the impact value" and how "broad[ly]" that "impact value" "affected the command, country, etc." *Id.* at 16. A supervisor in the Human Resources department further stated that supervisors submitted the names of those employees who had a "significant role [in] or [who made a significant] contribution" to the project's efforts to him, and he forwarded those nominations to the Special Systems Project Board of Directors for final approval. *Id.* When the EEOC conducted interviews with three of Adams's coworkers, all indicated that she played a significant role in the project, asserting: Adams was a "lead in their unit for Electrical Support Equipment and the Missile Test and Readiness Equipment," "had a significant role with the support test equipment," *id.* at 5–6, and was the "Missile Test and Readiness Manager," *id*. Each award recipient received $2,500. *Id.* at 5. Out of Adams's three coworkers that were interviewed during the investigation, all three received the award in question. *Id.* at 5–6. One of those coworkers is an African-American male born in 1962, one is a Caucasian male born in 1975, *id.* at 5, and the third is a Native-American and Caucasian male born in 1980*, id.* at 6.

The second incident occurred on April 13, 2015, when Adams sought to attend the Navy Sea, Air and Space Symposium that day in Washington, D.C. *Id.* Adams had received approval to attend and had attended the symposium "for the last four or five years." *Id.* The morning of the symposium, Adams sent her supervisor an email stating that she would be out for the day because she would be attending the symposium. *Id.* In his reply, that supervisor stated that he did not approve her request to attend the event and, upon consulting with the former Human Resources Specialist, told Adams that she would be considered absent without leave ("AWOL"). *Id.* at 6, 11. On May 4, 2015, Adams received a Letter of Caution, citing her failure to obtain approval to attend the symposium. *Id.* at 3, 11.

On June 18, 2015, Adams filed a formal EEO complaint with the Navy's Office of Equal Employment Opportunity pursuant to Title VII and the ADEA. *Id.* at 4. On January 21, 2016, she sent an email requesting a hearing before the EEOC, but she withdrew her request on February 27, 2017. *Id.* As a result, on May 2, 2017, the Navy's Office of Equal Employment Opportunity issued a final decision on the merits of Adams's formal complaint. *Id.* at 3. That decision examined Adams's claims of retaliation, disparate treatment, and harassment/hostile work environment and determined that the Navy did not discriminate against Adams on the basis of her race, sex or age, nor did it retaliate against her for filing a prior EEO complaint in 2011. *Id.* at 9, 18.

**B.     Procedural Background**

On August 2, 2017, Adams brought this action, *id.* at 1, and, on that same day, she filed a motion to leave to proceed *in forma pauperis* ("IFP"), Dkt. 2. On August 22, 2017, Adams's motion for leave to proceed IFP was denied, and her suit was (mistakenly) terminated. Dkt. 3. Two weeks later, Adams refiled the same suit with the required filing fee. *See* 1:17-cv-01845,

4

Dkt. 1. Because Adams's original action was incorrectly terminated without first providing her with the opportunity to pay the filing fee, the Court terminated her second suit, reinstated her first suit, and transferred the filing fee submitted with Adams's second suit to that of the first suit, Minute Order (Sept. 4, 2018); Dkt. 4 at 1.

The Navy then moved for summary judgment, or, in the alternative, for partial summary judgment and partial dismissal. Dkt. 11 at 1. On April 2, 2019, the Court issued a *Fox*/*Neal* order cautioning Adams about the need to respond to the Navy's motion. Dkt. 13 at 3. When Adams did not do so, the Court *sua sponte* extended her time to respond. Minute Order (Oct. 7, 2019). Finally, on March 9, 2020—months after both of the deadlines imposed by the Court had expired—the Court received a copy of Adams's response to the Navy's motion. Dkt. 20. Oddly, that document is stamped "Received" by the Clerk of Court on "August 16, 2019"—the date that Adams's response was originally due. *Id.* at 1. The Court will, accordingly, treat Adams's response as timely filed.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" *id.* at 556 (citation omitted), the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

Summary judgment, in contrast, is appropriately granted only "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is "'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

### III. ANALYSIS

**A.     Timeliness**

The Navy first moves for summary judgment with respect to the entirety of Adams's complaint on the ground that it is untimely. *See* Dkt. 11 at 12–16. Suits by federal employees

under both Title VII and the ADEA "must be brought within 90 days of final agency action." *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006); *see also* 29 C.F.R. § 1614.407(a). Although not jurisdictional, courts in this district have "strictly construed" this timeliness requirement, "even where the plaintiff is proceeding *pro se*." *Ruiz v. Vilsack*, 763 F. Supp. 2d 168, 171, 173 (D.D.C. 2011).

The Clerk of Court received Adams's original complaint on August 2, 2017, *see* Dkt. 1 at 1, 91 days after the issuance of the final decision by the Navy's EEO. Because the 90-day period runs from "*receipt* of notice of final action taken by" an agency, 42 U.S.C. § 2000e-16(c) (emphasis added), Plaintiff's complaint is not necessarily untimely, *see Anderson v. Local 201 Reinforcing Rodmen*, 886 F. Supp. 94, 97 (D.D.C. 1995). Where, as here, the plaintiff does not indicate in her complaint when she actually received the decision, courts "must fix a presumptive date of receipt for purposes of determining whether Plaintiff complied with the ninety[-]day filing requirement." *Id.* Although "courts are divided as to the presumptive date of receipt of a right-to-sue letter," they have consistently added more than one day for mailing, *id.*, which is all that is necessary in this case if the original complaint were "filed" on the day that it was received by the Clerk of Court.

The Navy argues, however, that Adams's complaint was not "filed" when it was received by the Clerk because Adams had not yet paid the filing fee. Dkt. 11 at 12–16. Although the Navy acknowledges that Adams sought leave to proceed *in forma pauperis* when she delivered her original complaint to the Clerk on August 2, 2107, it contends that the Court's denial of her motion means that "her complaint was improperly filed on August 2, 2017." *Id.* at 15. Moreover, the Navy continues, "[e]ven were the Court to give Adams the benefit of tolling while her IFP application was pending, plus three days for delivery of the Court's Order denying that

7

IFP request to Adams via U.S. mail, . . . Adams [still] failed to file her complaint properly within the 90-day period," *id*. at 16, because she did not refile with the filing fee until September 8, 2017, *see Adams v. Dep't of Navy*, No. 17-1845 (filed Sept. 8, 2017). The Court is unpersuaded.

The Navy cites—but fails to grapple with—*Morrison v. Nielsen*, 325 F. Supp. 3d 62, 68 (D.D.C. 2018), a decision of this Court that considered when a *pro se* complaint, delivered without a filing fee, should be considered "filed" for purposes of determining timeliness. *See* Dkt. 11 at 13. In *Morrison*, the Clerk of Court received the plaintiff's *pro se* complaint on the final day of the 90-day period for filing suit under Title VII and the Rehabilitation Act, 29 U.S.C. § 794 *et seq*. *Morrison*, 325 F. Supp. 3d at 66, 64, 68. Because Morrison's complaint—like Adams's—was not accompanied by the requisite filing fee, the Clerk did not docket the complaint until a month later. *Id.* After surveying the approaches taken by other courts, this Court held that, "[i]n the absence of a local rule in this district requiring the advance payment of the filing fee," a plaintiff's "complaint [is] 'filed' when it [is] first 'deliver[ed] . . . to the clerk.'" *Id.* at 68 (quoting Fed. R. Civ. P. 5(d)) (alteration in original). Accordingly, Adams's complaint was "filed" when it was received by the Clerk on August 2, 2017, *see* Dkt. 1, just within the 90-day period for filing suit.

The Court will, accordingly, deny the Navy's motion for summary judgment with respect to timeliness.

**B.  Exhaustion**

The Navy moves, in the alternative, for partial summary judgment on the ground that Adams failed to exhaust her administrative remedies with respect to any non-promotion claim or any claim related to business travel other than the April 2015 professional development symposium. Dkt. 11 at 16–18. "Both the ADEA and Title VII require that before filing a

lawsuit in federal court, a plaintiff must timely pursue and exhaust administrative remedies." *Duncan v. Johnson*, 213 F. Supp. 3d 161, 175 (D.D.C. 2016) (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir 1998)). The requirements of the two statutes are overlapping but not coextensive.

To exhaust under Title VII, a plaintiff must initiate contact with an EEO counselor within 45 days of the alleged discrimination, 29 C.F.R. § 1614.105(a)(1), and must file a complaint with that agency detailing the alleged discrimination, *id.* § 1614.106(a). That complaint need not "presage[]" "every detail of the eventual complaint" filed in federal court, *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997), but "plaintiffs alleging discrete acts of discrimination . . . 'must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others,'" *Rashad v. WMATA*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013); *see also Hargrove v. AARP*, 205 F. Supp. 3d 96, 118–19 (D.D.C. 2016). If the agency fails to resolve the plaintiff's complaint within 180 days of its filing, the plaintiff may then bring suit in federal court. 29 C.F.R. § 1614.407(b); *see also Wilson v. Pena*, 79 F.3d 154, 166 (D.C. Cir. 1996).

"Under the ADEA, a federal employee may elect to follow these same procedures or to take an alternative path to federal court." *Achagzai v. Broadcasting Bd. of Governors*, 170 F. Supp.3d 164, 172 (D.D.C. 2016). Under that alternative path, the ADEA permits "the employee [to] bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, [the employee] provides the EEOC with notice of [her] intent to sue at least 30 days before commencing suit." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003). "An employee who elects this path need not file an administrative complaint." *Achagzai*, 170 F. Supp. 3d at 172.

The exhaustion requirements of Title VII and the ADEA "are properly viewed as affirmative defenses, and thus 'the defendant bears the burden of pleading and proving' the defense." *Id.* at 174 (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). With respect to Plaintiff's ADEA claim, the Navy offers the declaration of Joseph Frazier, the EEO Specialist for the Navy's Strategic Systems Programs. *See* Dkt. 11-2 at 2. Frazier attests that he contacted the Navy's EEO office and that that office informed him that it did not receive from the EEOC any notice from Adams of intent to sue under the ADEA. *Id.* at 5 (Frazier Decl. ¶ 7). Based on this evidence, the Navy asserts, as a matter of undisputed fact, that "Adams did not file with the [EEOC] a notice of intent to sue, i.e, [she did not] opt for the alternative route to exhaust a claim under the [ADEA]." Dkt. 11-1 at 3 (SUMF ¶ 16). Because Adams does not controvert this assertion, the Court will accept it as true and concludes that Adams did not exhaust her administrative remedies by providing the EEOC with timely notice of her intent to bring suit under the ADEA. Thus, for her ADEA claim to be properly exhausted, Adams must have pursued the same internal EEO process required to exhaust her Title VII claims.

Adams invoked the EEO process twice during her time at the Navy, once in 2011 and once in 2015. Dkt. 11-2 at 2–4 (Frazier Decl. ¶¶ 2, 5). The claims that Adams raised in 2011 are not properly before the Court. The Navy issued a "Notice of Final Interview and . . . Right to File a Complaint of Discrimination" regarding those issues in May 2011, but Adams took no further steps regarding those matters. *Id.* at 2–3 (Frazier Decl. ¶ 3). Because, as explained above, a federal employee asserting claims under Title VII or the ADEA must bring suit "within 90 days of final agency action," *Price*, 470 F.3d at 389, even assuming that Adams had properly exhausted her 2011 claims, her time to bring suit has long since expired.

Adams fares better with respect to her 2015 invocation of the Navy's EEO process, although, even there, she failed to preserve some of the claims that she now seeks to pursue. In her June 2015 EEO complaint, Adams alleged that she was "subjected to a hostile work environment and ongoing harassment because of her race (African-American), sex (female), age (Year of Birth [YOB]: 1960) and reprisal (prior EEO activity, Docket Number 11-00003-01695) when:"[1]

1. On January 16, 2015, [she] did not receive a Special Act Award for her work on the D5 Life Extension Acceleration to Demonstrate and Shakedown operations (DASO)-25 effort;

2. [Her] travel activities began to be scrutinized, as evidenced by an instance that occurred on April 13, 2015, when she was advised that she had not obtained prior approval from her first level supervisor (S1), to attend the Navy Sea, Air, and Space Symposium, and she was threatened by S1 with being absent without leave (AWOL) for the time that she spent at the conference. While she was not charged with AWOL, she was given a Letter of Caution on May 4, 2015, citing her failure to follow supervisory instructions.

Dkt. 1 at 3 (Final Agency Decision). Because none of these allegations relate to the non-promotion claim that Adams now asserts, *see* Dkt. 1 at 1 (alleging that she was "black balled from promotions"), she has failed to exhaust her administrative remedies with respect to that claim. *See Marshall*, 130 F.3d at 1098.

The Court will, accordingly, grant summary judgment in favor of the Navy on Adams's non-promotion claim.

---

[1] Plaintiff has not provided a copy of her 2015 EEO complaint for the record and instead has offered only the Final Agency Decision regarding that complaint, nor has Plaintiff objected to the Defendant using the contents of the Final Agency Decision as the basis for its exhaustion argument. The Court, therefore, will rely on that Final Agency Decision to determine the contents of that complaint.

**C.     Motion to Dismiss**

The Navy also moves to dismiss Adams's remaining claims, except for her disparate treatment claim arising out of her non-selection for the Special Act Award, for failure to state a claim.  Dkt. 11 at 8 n.3, 18–28.

1.      *Hostile Work Environment*

The Navy first argues that Adams's discriminatory and retaliatory hostile work environment claims must be dismissed because she has failed to plead facts sufficient to state a plausible claim for relief.  Dkt. 11 at 18–21.  To prevail on a hostile work environment claim under either Title VII or the ADEA, a plaintiff must show "that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).  "To determine whether a hostile work environment exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (quoting *Harris*, 510 U.S. at 23).  At the pleading stage, however, she need "allege [only] facts capable of supporting such a finding." *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 136 (D.D.C. 2016).

Adams's complaint, including the attached Final Agency Decision, details only the denial of the Special Act Award and the denial of the opportunity to attend or remain at the 2015 symposium and related disciplinary actions—the same acts on which her disparate treatment and retaliations claims rest.  Generally speaking, "[u]se of the same discrete acts, upon which the

plaintiff bases h[er] discrimination and retaliation claims, to support a hostile work environment claim is disfavored." *Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017). More importantly, here, these acts—taken together—do not suffice to permit the plausible inference that the Adams' treatment was so "severe or pervasive" that it "alter[ed] the conditions of the [her] employment." *Boloch*, 550 F.3d at 2101 (quoting *Harris*, 510 U.S. at 21). These two incidents and the disciplinary actions related to Adams's attendance at the 2015 symposium are "work-related actions by supervisors," which, standing alone, are not "sufficient for a hostile work environment claim." *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see also Aldrich*, 197 F. Supp. 3d at 137–38 (holding that plaintiff's allegations of mistreatment, including reprimands for work performance, suspensions and placement on leave restrictions and a reassignment to a less favorable cubicle, did not suffice to state a claim for hostile work environment because they were "well within the bounds of 'ordinary tribulations of the workplace'" and not "severe or pervasive enough to constitute a hostile work environment").

The Court will, accordingly, dismiss Adams's hostile work environment claims for failure to state a claim upon which relief can be granted.

2.  *Disparate Treatment*

The Navy moves to dismiss Adams's disparate treatment claim insofar as it is based on the 2015 symposium because neither the denial of her request to attend nor the related disciplinary actions amounted to an "adverse employment action." Dkt. 11 at 21–24. To successfully press a disparate treatment claim, a plaintiff must show "(1) that she suffered an adverse employment action (2) because of her protected status." *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 15 (D.D.C. 2016). An adverse employment action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). "Thus, 'not everything that makes an employee unhappy is an actionable adverse action.'" *Id.* (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)). Rather, the employer's action must "affect[] the terms, conditions, or privileges of employment or future employment opportunities." *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev., Office of Inspector Gen.*, 867 F.3d 70, 73 (D.C. Cir. 2017).

Adams's discrimination claim based on the 2015 symposium arises out of three actions taken by her supervisors: (1) she was denied the opportunity to attend the 2015 symposium; (2) she was threatened with being found AWOL if she did not promptly return to work from the 2015 symposium; and (3) she received a Letter of Caution for failing to comply with her supervisor's instructions in this regard. Dkt. 1 at 3. None of these actions amounts to an adverse employment action. "[D]enial of a single training or travel opportunity does not"—standing alone—"constitute an adverse employment action," *Edwards v. U.S. EPA*, 456 F. Supp. 2d 72, 85 (D.D.C. 2006), unless it "result[s] in an objectively tangible harm," *Casey v. Mabus*, 878 F. Supp. 2d 175, 184 (D.D.C. 2012). Similarly, a verbal threat of being found AWOL or a "written reprimand," like the Letter of Caution, "if not abusive in tone or language or a predicate for a more tangible form of adverse action will rarely constitute materially adverse action." *Kilby-Robb v. Duncan*, 210 F. Supp. 3d 150, 161 (D.D.C. 2016) (quoting *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 102 (D.D.C. 2011)). Because Adams has not alleged any facts demonstrating that the letter of reprimand or threat of being found AWOL "could affect [her] position, grade level, salary or promotion activity," *Baloch*, 550 F.3d at 1199, they do not constitute adverse action for purposes of a disparate treatment discrimination claim.

3.      *Retaliation*

The Navy moves to dismiss Adams's retaliation claims on the ground that Adams has not pled facts sufficient to show a causal connection between the protected activity—a 2011 EEO complaint—and the 2015 employment actions that form the basis of her claims.  Dkt. 11 at 24–26.  To prevail on a retaliation claim, a plaintiff must show that "(1) she engaged in statutorily protected activity; (2) a reasonable employee would have found the challenged employment action materially adverse; and (3) there was a causal connection between the protected activity and the materially adverse action." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 80 (D.D.C. 2015) (applying the Title VII retaliation standard to ADEA claims).  "Although judges in this [district] are of different minds about what facts a plaintiff must plead to allege a causal connection in support of a retaliation claim, all agree that, at minimum, a plaintiff must allege 'that he or she was subjected to an adverse action "*because of*" protected activity.'" *Mohmand v. Broad. Bd. of Governors*, No. 17-618, 2018 WL 4705800, at *5 (D.D.C. Sept. 30, 2018) (quoting *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 200–01 (D.D.C. 2017)).

In certain circumstances, "[t]emporal proximity" between the protected activity and the retaliatory act "can . . . support an inference of causation, but only where the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)) (alteration in original).  Here, however, there is a more than three-year gap between the 2011 protected activity and the alleged retaliation, which took place in 2015.  That is simply too long.  *See Clark Cnty. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that an action taken 20 months after the protected activity "suggests, by itself, no causality at all").  Because Adams has pleaded no other facts that might support a

plausible inference that the alleged retaliatory acts were "because of" her 2011 EEO activity, her retaliation claims based on those discrete acts must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Navy's motion for summary judgment or, in the alternative, for partial summary judgment and dismissal of Adams's claims.  Because the Court has rejected the Navy's untimeliness defense, and because the Navy has not otherwise moved for summary judgment or dismissal with respect to Adams's claim that the Navy discriminated against her based on her race, sex, age and protected EEO activity when it declined to select her for the Special Act Award, that claim—and only that claim—remains in the case.

**SO ORDERED.**

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date:  May 8, 2020