UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONNA ADAMS,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE NAVY,<br><br>    *Defendant.* | Civil Action No. 17-1618 (RDM) |

## MEMORANDUM OPINION

Plaintiff Donna Adams, proceeding *pro se*, brings this action against the United States Department of the Navy ("the Navy"), where she worked as an Electronics Engineer. Dkt. 1 at 4 (Compl.). The complaint alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq. See id.* at 1 (Compl.). The Court previously dismissed all but one of Adams' claims, *see Adams v. U.S. Dep't of the Navy*, 2020 WL 2308581 (D.D.C. May 8, 2020), and the Navy now moves for summary judgment on that remaining claim, Dkt. 56. For the reasons explained below, the Court will grant the Navy's motion.

### I. BACKGROUND

**A.    Factual Background**

The Court has previously set forth the factual backgrounds in this case, *see Adams*, 2020 WL 2308581, at *1–2, and will describe only the facts relevant to the Navy's motion here.

Adams is an African-American woman who was employed as an Electronics Engineer with the Navy's Strategic Systems Program. Dkt. 1 at 1, 3–4 (Compl.). Adams was born in 1960, making her around 55 years old that the time of the incident underlying her claim. *Id.*;

Dkt. 56-5 at 4. In her role at the Navy, Adams worked on a project called "D5 Life Extension Acceleration to Demonstrate and Shakedown Operations-25" ("DASO-25"). Dkt. 56-2 at 2 (Def.'s SUMF ¶ 7). The Navy decided to "accelerate" the timeline for DASO-25 by one year. *Id.* at 2 (Def.'s SUMF ¶ 9). To reward employees who "contributed to the acceleration of" DASO-25, the Navy decided to issue "Special Act Award[s]." *Id.* "The Navy provides the Special Act Award to individuals or groups in recognition 'of a non-recurring, exemplary contribution or achievement, either within or outside an employee's normal job responsibilities that exceeds normal job requirements and results in verifiable, significant tangible or tangible benefits, saving the government time, manpower, or money.'" *Id.* at 2 (Def.'s SUMF ¶ 8) (quoting Dkt. 56-3 at 7). Each Special Act Award recipient receives $2,500. Dkt. 56-3 at 2; *Adams*, 2020 WL 2308581, at *2.

Initially, Adams' second-level supervisor nominated 52 individuals for the award, including Adams, for their "supporting contributions" to DASO-25. Dkt. 56-2 at 2–3 (Def.'s SUMF ¶¶ 5, 10). "The basis for listing [Adams] as a supporting contributor was that [Adams] served as the project manager for two pieces of the project support equipment," but Adams' contributions were essentially "limited to attending meetings and did not involve the delivery of any new major projects." *Id.* at 4 (Def.'s SUMF ¶¶ 17–18).

Shortly thereafter, for "budgetary reasons," Adams' second-level supervisor was "directed to submit a revised list of nominees for the Special Act Award with only the names of individuals identified as 'major contributors' being included." *Id.* at 3 (Def.'s SUMF ¶ 11). "'Major contributors' were defined as individuals who 'went above and beyond their normal duties' and who 'coordinated across multiple organizations that resulted in a successful flight test' in relation to" DASO-25. *Id.* at 3 (Def.'s SUMF ¶ 13). The revised list "included the

names of only twelve major contributors." *Id.* at 4 (Def.'s SUMF ¶ 19). As a result, Adams "was not among the Special Act Award recipients," although "[s]everal of [Adams'] colleagues received the Special Act Award" including "an African American male born in 1962 and with a history of prior protected activity;" "a Caucasian male born in 1965," "a Caucasian male in 1975" and "a Caucasian and Native American man born in 1980." *Id.* at 4 (Def.'s SUMF ¶¶ 20–21).

A few months later, Adams filed a formal EEO complaint with the Navy's Office of Equal Employment Opportunity pursuant to Title VII and the ADEA, stating, in relevant part, that "[she] did not receive a Special Act Award for her work on" DASO-25. Dkt. 1 at 3 (Final Agency Decision). Her complaint alleged that the Navy declined to give her the award based on her race, sex, and age, as well as in retaliation for a prior EEO complaint Adams filed in 2011, over three years earlier.[1] *Id.* The Navy's Office of Equal Employment Opportunity investigated and issued a final decision on the merits of Adams' complaint, concluding that the Navy did not discriminate against Adams on the basis of her race, sex, or age, nor did it retaliate against her for filing a prior EEO complaint. Dkt. 1 at 3, 16–18 (Compl.).

**B.     Procedural Background**

Adams filed this suit in 2017, after receiving the Navy Office of Equal Employment Opportunity's final decision. Dkt. 1 (Compl.).

Her complaint is a single handwritten page that reads, in relevant part, as follows:

> On January 16, 2015, I did not receive a Special Act Award for my work on the D5 Life Extension Acceleration to Demonstration and Shakedown Operations (DASO-25) efforts. I was subject to a hostile work environment and ongoing

---

[1] As the Court explained in its prior opinion, "Adams invoked the EEO process twice during her time at the Navy, once in 2011 and once in 2015." *Adams*, 2020 WL 2308581, at *5. The Navy issued a final determination and right-to-sue letter with respect to the 2011 complaint, "but Adams took no further steps regarding those matters." *Id.*

3

>harassment base[d] on my race (African-American), sex (female), age (DOB: 02/26/1960), and reprised/reprisal (prior EEO activity, Docket Number 11-00030-01695. My business travel was scrutinized, blackballed for promotions to GS-14 and higher.

*Id.* at 1 (Compl.).

The Navy filed a motion for summary judgment, or, in the alternative, for partial summary judgment and partial dismissal, Dkt. 11 at 1, which the Court granted in part and denied in part, *see Adams*, 2020 WL 2308581, at *3–7. Specifically, the Court granted summary judgment in favor of the Navy as to Adams' "non-promotion claim" due to her failure to exhaust administrative remedies, *see id.* at *4–5, dismissed Adams' claims of hostile work environment, and dismissed her other claims of discrimination and retaliation, *id.* at *6–7. The Court held, however, that "because the Navy has not otherwise moved for summary judgment or dismissal with respect to Adams's claim that the Navy discriminated against her based on her race, sex, age and protected EEO activity when it declined to select her for the Special Act Award, that claim—and only that claim—remains in the case." *Id.* at *7.

Following the close of discovery, the Navy filed a motion for summary judgment on this remaining claim. Dkt. 56. In accordance with Federal Rule of Civil Procedure 56 and Local Rule 7(h), the Navy submitted declarations, exhibits, and a "Statement of Material Facts" not in dispute containing 28 facts, each supported by a citation to evidence in the record. *See* Dkt. 56-2. The Court issued a *Fox/Neal* Order,[2] advising Adams, a *pro se* litigant, of her deadline to respond, and cautioning her that, "[w]hen the Court rules on Defendant's motion for summary judgment, it will accept as true any factual assertion supported by the affidavits (or declarations) or other documentary evidence submitted with the motion, unless you submit your own affidavits

---

[2] According to the CM/ECF receipt, the Order was delivered to Adams via email. *See* Dkt. 57 (NEF receipt); *see also* Dkt. 58 at 7 (Adams' email address).

(or declarations) or other documentary evidence contradicting the factual assertion." Dkt. 57 at 1. The Order specifically instructed Adams that "under Local Rule 7(h), your opposition must 'be accompanied by a separate concise statement of genuine issues' that responds to Defendant's 'statement of material facts as to which there is no genuine dispute.'" *Id.* at 2. The Order also explained the summary judgment process under Federal Rule of Civil Procedure 56, setting forth the requirements under subsection (c):

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Finally, the Order cautioned that, if Adams failed to adhere to these rules, the Court could "consider the [movant's] fact undisputed" and grant summary judgment on that basis. Dkt. 57 at 2 (quoting Fed. R. Civ. P. 56(e)).

Adams failed to respond to the Navy's motion by the ordered deadline, leading the Court to *sua sponte* extend her time to respond. *See* Min. Order (May 3, 2024). Adams filed her opposition by the extended deadline, but she did not file a statement disputing any facts asserted in the Navy's statement of facts, nor did she file any declarations, exhibits, or evidence of any kind to support any assertions in her opposition brief. *See* Dkt. 58.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to

5

judgment as a matter of law," Fed. R. Civ. P. 56(a), and must "identify[] those portions" of the record that "demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial."  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)).  In considering a motion for summary judgment, the Court must resolve all factual disputes and draw "all justifiable inferences" in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Mastro v. Pepco*, 447 F.3d 843, 850 (D.C. Cir. 2006).  But the non-moving party's opposition must consist of more than mere allegations or denials; instead, it must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

In general, *pro se* litigants are held to "less stringent standards," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and district courts must make reasonable efforts to ensure that *pro se* litigants understand the obligations of litigation and the consequences of failing to fulfill those obligations, *see Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988).  Nonetheless, this benefit is not "a license to ignore the Federal Rules of Civil Procedure," the Local Rules, or an order of the Court.  *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 397 (D.C. Cir. 2020) (internal quotation marks and citation omitted).

### III.   ANALYSIS

A.   **The Navy's Statement of Undisputed Facts**

Before addressing the merits of Adams' claims, the Court must decide whether to treat the Navy's statement of facts, Dkt. 56-2, as conceded.  As explained above, Adams filed a response to the Navy's motion for summary judgment, but her response was not accompanied by "a separate statement disputing any facts asserted in" the Navy's statement, "as required by Local Rule 7(h)(1)."  *Oviedo*, 948 F.3d at 391.  And, "more importantly," Adams did not provide the Court with any evidence to support any assertions in her opposition brief.  *Id.*

"The importance of filing a proper Rule [7](h) statement is well established."  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (discussing predecessor to Rule 7(h)).  The rule "assists the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively," *id.* at 150, and the D.C. Circuit "has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court," *Burke v. Gould*, 286 F.3d 513, 517–20 (D.C. Cir. 2002).  Rule 7(h)'s requirements are equally applicable to *pro se* litigants.  So long as the district court provides notice of these obligations by issuing a *Fox/Neal* Order, no "second warning" is required.  *Oviedo*, 948 F.3d at 397–98.  Thus, a district court "act[s] perfectly within its authority to 'consider a fact undisputed'" where a *pro se* plaintiff fails to respond to the defendant's statement of facts or otherwise "fail[s] to properly support an assertion of fact" in her opposition brief.  *Id.* at 397.

In this case, the Court's *Fox/Neal* Order instructed Adams of her need to respond to the Navy's statement of facts, as well as her obligation to file declarations, exhibits, or other evidence in support of her position.  *See* Dkt. 57.  Yet Adams did not adhere to these

7

requirements. Not only did Adams fail to file a separate statement of facts or any evidence, but her opposition brief does not address the Navy's statement of facts, and instead reiterates conclusory allegations of "discriminatory and retaliatory actions." Dkt. 58 at 2. Adams, for example, does not contest that the Navy decided to reduce the number of nominees for the Special Act Award for "budgetary reasons," nor does she identify any facts suggesting she should have been categorized as a "major contributor[]" to DASO-25. Dkt. 56-2 at 3 (Def.'s SUMF ¶ 11). Indeed, Adams' opposition devotes scant attention to her single remaining claim, merely alleging (without evidentiary or factual support) that the Navy denied her the award despite her "leadership" in bringing the DASO-25 project "to successful completion" and her "substantial" contribution to the project. Dkt. 58 at 2. Her opposition otherwise focuses on claims that the Court previously dismissed, including "promotion denials," "hostile work environment," and other incidents of alleged "retaliatory actions." *Id.* at 2–3 (capitalization altered). The Court, accordingly, concludes that Adams has conceded the facts set forth in the Navy's statement, and so the Court will rely on those facts to decide the Navy's motion.

B.   **Discrimination and Retaliation Claims**

Adams claims that she was denied the Special Act Award on account of her race, sex, age, and 2011 EEO activity, in violation of Title VII and the ADEA. *See* Dkt. 1 at 1. This claim is governed by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Under that framework, once the plaintiff has established a prima facie case of discrimination or retaliation, "the burden . . . shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113–14 (D.C. Cir. 2016) (citation omitted). "[T]he burden then shifts back to the plaintiff, who must be afforded a fair opportunity

8

to show that the employer's stated reason for its actions was in fact pretext for unlawful discrimination." *Id.* To show pretext, the plaintiff must demonstrate "*both* that the reason [for the challenged action] was false, *and* that discrimination was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (emphasis in original and alteration omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). At this point, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer" discrimination or retaliation based upon "all the evidence." *Jones*, 557 F.3d at 677 (quoting *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)). In other words, in considering the employer's proffered reason and any contrary evidence adduced by the plaintiff, "[t]he only question that remains is whether the evidence creates a material dispute on the ultimate issue"—that is, whether employer discriminated or retaliated against the employee. *Wheeler*, 812 F.3d at 1114 (citation omitted).

    Here, the Navy articulated a non-discriminatory and non-retaliatory reason for declining to give Adams a $2,500 Special Act Award for her work on DASO-25. Although Adams was initially slated to receive an award along with 52 other "supporting contributors," the Navy decided to limit the awards to a smaller group of "major contributors" for "budgetary reasons." Dkt. 56-2 at 3 (Def.'s SUMF ¶¶ 10–11). "[B]udgetary constraints," of course, are a "legitimate, nondiscriminatory reason" to decrease the number of recipients of a monetary award. *Hill v. Bd. of Trustees of Univ. of D.C.*, 245 F. Supp. 3d 214, 216 (D.D.C. 2017). Adams' contributions to DASO-25 were more modest, and so the Navy ultimately did not include her among the award recipients. Dkt. 56-2 at 3–4 (Def.'s SUMF ¶¶ 11, 16–17). Adams does not meaningfully dispute these facts, nor does she offer any evidence of pretext that would allow a jury to infer that the Navy was instead motivated by discriminatory or retaliatory animus. Because there is no

"material dispute on the ultimate issue[s]," *Wheeler*, 812 F.3d at 1114 (citation omitted), the Navy is entitled to judgment as a matter of law, *see* Fed. R. Civ. P. 56(a).

## CONCLUSION

For the foregoing reasons, the Court will grant the Navy's motion for summary judgment, Dkt. 56.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 20, 2025